## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID KENNEDY<br>1725 Memorial Avenue<br>Philadelphia, PA 19104 : : : : : : : : : : : : : : : : : : : : : : : : : :<br><br>            Plaintiff,<br><br>   v.<br><br>TRIPLE CANOPY, INC.<br>13530 Dulles Tech Drive #500<br>Herndon, VA 20171<br>       and<br>CONSTELLIS HOLDINGS, INC.<br>d/b/a CONSTELLIS<br>13530 Dulles Tech Drive #500<br>Herndon, VA 20171<br><br>           Defendants. | CIVIL ACTION<br><br>No.: 22-394<br><br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CIVIL ACTION COMPLAINT

David Kennedy (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Triple Canopy, Inc. and Constellis Holdings, Inc. d/b/a Constellis (*hereinafter* referred to as "Defendants") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO").[1]  As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

---
[1] Plaintiff's claims under the PHRA and PFPO are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly assert personal jurisdiction over Defendants because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where it is subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5. Plaintiff is proceeding herein after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

advance of same because of the date of issuance of his federal right-to-sue-letter under Title VII. Plaintiff's PHRA and PFPO claims however will mirror identically his federal claims under Title VII and 1981.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant Triple Canopy, Inc. is a private security company that provides security and other services to corporate, government and nonprofit clients throughout the United States, including in Philadelphia, Pennsylvania, where Plaintiff primarily worked.

9. Defendant Constellis Holdings, Inc. d/b/a Constellis is a privately-held defense and security company, which previously merged with Defendant Triple Canopy, Inc. and provides similar security related services for clients throughout the United States, including in Philadelphia, Pennsylvania, where Plaintiff primarily worked.

10. Defendant Triple Canopy, Inc. and Defendant Constellis Holdings, Inc. d/b/a Constellis share a common business/principal office address at the above captioned address, a common mailing address at the above captioned address, and share and have interrelation of operations, management, and employees.

11. Because of their interrelation of operations or management, centralized control and sharing of labor, commingling of funds, common ownership or management, common financial controls, and other factors, Defendants are sufficiently interrelated and integrated that they may be treated as a single and/or joint employer for purposes of the instant action.

12. At all times relevant herein, Defendants acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff is a black (African-American) male.

15. Plaintiff was hired by Defendants in or about March of 2020 as a Lieutenant Supervisor, overseeing Defendants' Security Officers.

16. While Defendants are headquartered in Virginia, Plaintiff was considered a "rover," working between several of Defendants' clients in the Philadelphia, Pennsylvania metropolitan area.

17. During his employment, Plaintiff was primarily supervised by Captain Joseph Bohrer (Caucasian – *hereinafter* "Bohrer").

18. The large majority of Defendants' upper management in the Philadelphia metropolitan area are almost entirely Caucasian and/or non-black.

19. Based on Plaintiff's observations and belief, African-American employees, including Bryan Poole, Tyshon Hasty, PSO [First Name Unknown] Calhoun, Lieutenant Mack, and Michael Coston, were often treated differently and less favorably than Caucasian employees by Caucasian upper management.

20. Indeed, Plaintiff and other African-American employees, including same as noted above, were also subjected to hostility and animosity through racially-discriminatory and disparate treatment.[2]

21. By way of example, but not intended to be an exhaustive list:

   a. Disciplinary, cell-phone, and break-related policies were selectively enforced against African-American employees;

---

[2] Several years prior to Plaintiff's employment with Defendants, he worked as an Investigator for the Pennsylvania Human Relations Commission ("PHRC"); as a result, Plaintiff is able to easily recognize discrimination, disparate treatment, and retaliation in its many forms.

4

b. African-American employees, including those mentioned above, were treated less favorably than Caucasian and/or non-black employees with regard to building assignments and treatment by management;

c. Plaintiff and other African-American employees were treated in a derogatory and demeaning way and regularly talked down to, including by Lieutenant Gueli (a Caucasian Lieutenant at Plaintiff's same rank, but despite that would talk down to Plaintiff);

d. African-American employees were subjected to unfair discipline and termination, unlike their Caucasian and/or non-black co-workers for the same or similar infractions; and

e. Unlike their Caucasian and/or non-black co-workers, Plaintiff and other African-American employees were not given progressive discipline, but instead, were regularly terminated for first offenses, including regarding the "post abandonment" disciplinary policy.

22. Plaintiff objected/complained to management on multiple occasions, refusing to issue unfair discipline to black employees for infractions for which Caucasian and/or non-black employees were not disciplined.

23. Plaintiff was then abruptly terminated in or about January of 2021, for "post abandonment" – completing administrative work (i.e., disciplinary reports, maintenance reports, etc.) at home instead of at the job site.

24. Defendants' aforesaid purported reason for Plaintiff's termination – "post abandonment," however, is completely pretextual because (1) there was no real place to perform administrative work (for which Plaintiff needed a computer and/or printer) in his car; (2) several

Caucasian and/or non-black members of management and employees regularly completed their administrative work at home and, upon information and belief, were not terminated or even disciplined for same; and (3) Plaintiff was terminated in close proximity to his concerns of/objections to the unfair and disparate treatment of African-American employees.

25. Furthermore, upon information and belief, unlike Caucasian and/or non-black employees, Defendants had a pattern and practice of unfairly terminating black employees for petty and/or minor infractions under the guise of "post abandonment."

26. For example, Plaintiff discovered after his discriminatory and unlawful termination that another African-American Lieutenant Supervisor, Lieutenant Mack had also been terminated for the same "post abandonment" reason, leaving only one remaining African-American Lieutenant Supervisor at that location.

27. Therefore, Plaintiff believes and avers that he was subjected to a hostile work environment and terminated because of his race and his objections to/complaints of race discrimination.

## COUNT I
### Violations of 42 U.S.C. Section 1981
([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)
-Against Both Defendants-

28. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

29. During Plaintiff's employment with Defendants, he was subjected to discrimination, retaliation, and a hostile work environment through disparate treatment as outlined *supra* because of his race.

30. Plaintiff objected to the aforementioned instances of race discrimination and disparate treatment by Defendants' management but, his concerns were ignored, and Defendants'

management continued to subject Plaintiff and other African-American employees to hostility, animosity, and disparate treatment because of their race.

31. Plaintiff was then terminated for completely pretextual reasons in or about January of 2021.

32. Therefore, Plaintiff believes and avers that he was subjected to a hostile work environment and terminated because of his race and hie objections to/complaints of race discrimination.

33. These actions as aforesaid constitute violations of Section 1981.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. During Plaintiff's employment with Defendants, he was subjected to discrimination, retaliation, and a hostile work environment through disparate treatment as outlined *supra* because of his race.

36. Plaintiff objected to the aforementioned instances of race discrimination and disparate treatment by Defendants' management but, his concerns were ignored, and Defendants' management continued to subject Plaintiff and other African-American employees to hostility, animosity, and disparate treatment because of their race.

37. Plaintiff was then terminated for completely pretextual reasons in or about January of 2021.

38. Therefore, Plaintiff believes and avers that he was subjected to a hostile work environment and terminated because of his race and hie objections to/complaints of race discrimination.

39. These actions as aforesaid constitute violations of Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

                                              Respectfully submitted,

                                              **KARPF, KARPF & CERUTTI, P.C.**

                                              */s/ David N. Korsen*
                                              _____

                                              David N. Korsen, Esq.
                                              Two Greenwood Square
                                              3331 Street Road, Suite 128
                                              Bensalem PA 19020
                                              (215) 639-0801 Phone
Dated: April 15, 2022                     (215) 639-4970 Fax